**In re the PREMCOR REFINING GROUP, INC. and Motiva Enterprises L.L.C.**

No. 09–07–269 CV.

Court of Appeals of Texas, Beaumont.

Submitted July 12, 2007.

Decided Aug. 30, 2007.

Jennifer Bruch Hogan, Richard P. Hogan, Jr., Hogan & Hogan, L.L.P., Andrew L. Strong, David Goldberg, Pillsbury Winthrop Shaw Pittman LLP, Reagan W. Simpson, Reginald R. Smith, R. Bruce Hurley, C. Brannon Robertson, Tara K. Kelly, Benjamin D. Seal, King & Spalding LLP, Houston, Michael K. Eaves, Calvert Eaves Clarke & Stelly, LLP, Beaumont, for relators.

Thomas J. Pearson, Jason B. Keith, Cimron Campbell, of counsel, Pearson Campbell, P.C., Beaumont, Brock C. Akers, Evelyn Ailts Derrington, Neal D. Kieval, Phillips & Akers, P.C., Houston, for real parties in interest.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

PER CURIAM.

The Premcor Refining Group, Inc. and Motiva Enterprises L.L.C., (collectively referred to as "Premcor") petition for a writ of mandamus to compel the trial court to dismiss certain causes of action alleged in separate toxic tort petitions. The real parties in interest, Crystal Faulk as next friend of Abel Barragan, a minor, et al., and Michelle Kyles as next friend of Kevin Thomas, Jr. and Kym'Ijah Thomas, minors, et al., (collectively referred to as "plaintiffs") are separate groups of plaintiffs, the majority of which are minors, who have instituted mass toxic tort actions against a large number of petroleum,

chemical, and energy-related industries. Plaintiffs' petitions enumerate causes of action for negligence per se, negligence, fraud, permanent nuisance, trespass, and assault. Premcor's motion to dismiss, however, limits itself only to those claims involving "permanent injury to land, because Plaintiffs have no standing to bring such claims." An examination of the pleadings at issue indicate both contain identical allegations under the "Permanent Nuisance" causes of action, and read, in pertinent part, as follows:

> ... The Plaintiffs allege that the Defendants knowingly, intentionally and recklessly interfered with the use and enjoyment of their property. The interference inflicted upon the Plaintiffs at their property by Defendants is constant, continuous and likely to continue indefinitely.
>
> ... Specifically, Defendants have and continue to substantially interfere with the use and enjoyment of Plaintiffs' property in the following ways:
>
> ... Discharging noxious fumes, vapors, odors, hazardous materials and other particulate matters into the Plaintiffs' environment;
>
> ... Failing to remove the noxious fumes, vapors, odors, hazardous material and other particulate matters from the Plaintiffs' environment;
>
> ... Interfering with the Plaintiffs' comfort, proper use and enjoyment of their property; and
>
> ... Discharging noxious fumes, vapors, odors, hazardous material and other particulate matters that were substantially offensive, annoying and discomforting to persons of ordinary sensibilities, tastes and habits living in the locality where the premises are located.
>
> ... Defendants' interference with the use and enjoyment of the Plaintiffs'

property was a proximate and producing cause of all injuries suffered by the Plaintiffs.

In the "Statement of Facts" paragraph of each petition, the plaintiffs also plead that: "these noxious fumes, vapors, odors, particulates, and hazardous substances are emitted by the Defendants' industrial facilities into the ambient air onto, across or near enough to the Plaintiffs' homes to cause nuisance conditions, cause damage to the Plaintiffs' property, potentially cause personal injury and to constitute trespass."

Included within the various damages sought by the Faulk group of plaintiffs are those for "loss of value, to their homes and property as a result of the emissions from Defendants' facilities[,]" and "[l]oss of the use and enjoyment of their property as a result of emissions from Defendants' facilities[.]" The Kyles group of plaintiffs include in their list of damages only the "[l]oss of the use and enjoyment of their property as a result of emissions from Defendants' facilities[.]"

Premcor contends the plaintiffs lack standing to pursue claims for permanent injury to land, whether under theories of permanent nuisance, negligence, or trespass, because any injury to the land is permanent in nature, and none of the plaintiffs were the owners of their respective properties when the initial injury to those properties took place. The plaintiffs' response to Premcor's mandamus petition explains their claims in the following manner:

> Plaintiffs freely admit they are neither landowners nor seeking property damages for injury to land. In the underlying case, it matters not whether the minor [plaintiffs] or their parents are owners or subsequent purchasers of the property they formerly occupied or now occupy because [plaintiffs] sue for per-

sonal injuries in addition to the loss of use and enjoyment of property. Even *Brooks,* a case relied upon by [Premcor], recognizes that "[d]amages for personal injuries may arise independently of any indicia of ownership." *Brooks* [*v. Chevron USA Inc.*], 2006 WL 1431227 at *7 n. 9 [ (Tex.App.-Corpus Christi 2006) ] (*citing Schneider,* 147 S.W.3d at 269 n. 5 and *Vestal v. Gulf Oil Corp.,* 149 Tex. 487, 235 S.W.2d 440, 441–42 (1951). Thus, [Premcor]'s proffered evidence and cited authorities regarding subsequent purchasers do not defeat the minor Plaintiffs' standing to sue for the loss of use and enjoyment of the family homes they occupied and for personal injuries they sustained while living there.

■ Apart from their claims for personal injuries, which are not before us in this mandamus proceeding, and notwithstanding the assertion that they are not seeking damages for "injury to land," it appears that plaintiffs are indeed seeking damages for an injury to real property by way of a private nuisance action. "A private nuisance is a nontrespassory invasion of another's interest in the private use or enjoyment of land." *Lethu Inc. v. City of Houston,* 23 S.W.3d 482, 489 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *Bily v. Omni Equities, Inc.,* 731 S.W.2d 606, 611 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.). By contrast, a "public" or "common nuisance" is a condition that amounts to an unreasonable interference with a right common to the general public. *See Jamail v. Stoneledge Condo. Owners Ass'n,* 970 S.W.2d 673, 676 (Tex.App.-Austin 1998, no pet.). However, whether the nuisance be public or private, it "is thus a field of tort liability, a kind of damage done, rather than any particular type of conduct. As in the case of any other kind of damage, it may be inflicted by conduct which is intended to cause

harm, by that which is merely negligent, or by that which involves an unusual hazard or risk[.]" *City of Tyler v. Likes,* 962 S.W.2d 489, 504 (Tex.1997) (quoting William L. Prosser, *Nuisance Without Fault,* 20 Tex. L.Rev. 399, 416 (1942)).

■ As previously noted, the plaintiffs have classified the presence of the "noxious fumes, vapors, odors, hazardous materials and other particulate matters" on and around their property as a "permanent nuisance," apparently because these conditions are "constant, continuous, and likely to continue indefinitely." This would certainly be in line with the re-affirmance of the traditional Texas definition of "permanent nuisance" as "one that involves 'an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely[,]'" and of the rule that a nuisance is "permanent if it is 'constant and continuous,' and if 'injury constantly and regularly recurs.'" *See Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 272–73 (Tex.2004) (footnotes omitted). Additionally, the plaintiffs have not pled any recent industrial accident or that any other "irregular occurrence" has created nuisance conditions "so different in character and potential injury that it must be treated as a temporary nuisance ... regardless of how long general industrial operations have been ongoing." *See id.* at 292.

That the alleged nuisance affecting the real property of each of the plaintiffs is permanent in nature would seem to be confirmed by information contained in two affidavits included in the mandamus record. In the first, Larry Bodin, former communication coordinator at The Premcor Refining Group Inc.'s Port Arthur refinery, stated that he spent "hundreds of hours" researching the history of Premcor Refining Group's Port Arthur refinery for

an article he was writing. Based upon this research, as well as on his personal knowledge, Bodin indicated that Premcor's Port Arthur refinery "began operating at its current site [ ] in November 1901, and it has been in permanent, continuous operation every year since 1901. Premcor's Port Arthur refinery has been in the business of converting crude oil into usable products since its inception in 1901." The second affidavit was submitted by Elton N. Gish, the clean products coordinator of the business planning department at Motiva's Port Arthur refinery ("PAR"). Gish, author of "the definitive history of PAR," spent hundreds of hours researching PAR's business records for historical information on PAR. From his research, Gish learned that PAR began its operation at its current location on November 13, 1903, and has been in operation every year since, converting crude oil into usable products. Gish added that by the 1950's, "PAR processed over 100 million barrels of crude per year, creating aviation fuel, gasoline, kerosene, lube oil, petrolatum, waxes, fuel oil, and coke." Gish also stated that as of March, 2007, PAR refines approximately the same amount of crude as in the 1950s. We can find no contrary evidence or assertions from the plaintiffs to the historical facts as set out in the affidavits from Bodin and Gish. We can only conclude that the "noxious fumes, vapors, odors, hazardous materials and other particulate matter" emitted by Premcor "into the ambient air onto, across or near enough to the Plaintiffs' homes to cause nuisance conditions, cause damage to the Plaintiffs' property, . . ." are not of recent vintage. Therefore, we find that any "damage to the Plaintiffs' property," as pleaded in each petition alleges a permanent injury to land. We do not address, and make no finding, with regard to any pleadings involving personal injury damages.

■■■■ "Where injury to land results from a thing that the law regards as a permanent nuisance, the right of action for all the damages resulting from the injury accrues to the owner of the land at the time the thing that causes the injury commences to affect the land. In legal contemplation the injury to the land occurs at that time." *Vann v. Bowie Sewerage Co.,* 127 Tex. 97, 90 S.W.2d 561, 562 (1936); *see also Schneider Nat'l Carriers, Inc.,* 147 S.W.3d at 270. Additionally, a cause of action for injury to real property is a personal right which belongs to the person who owns the property at the time of the injury. *See Gleason v. Taub,* 180 S.W.3d 711, 713 (Tex.App.-Fort Worth 2005, pet. denied); *Exxon Corp. v. Pluff,* 94 S.W.3d 22, 27 (Tex.App.-Tyler 2002, pet. denied); *Senn v. Texaco, Inc.,* 55 S.W.3d 222, 225 (Tex.App.-Eastland 2001, pet. denied); *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.).

■■■■ Standing is a necessary component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–45 (Tex.1993). Subject matter jurisdiction is essential to the authority of a court to decide a case. *Id.* Whether a trial court has subject matter jurisdiction is a question of law subject to de novo review. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). An examination of pertinent jurisdictional evidence in the mandamus record indicates any injury to the real property in question from fumes, odors, vapors, hazardous materials, and particulate matter first occurred at least fifty years ago, and possibly well before that as both the Premcor and Motiva facilities at issue have been fully operational for over one hundred years. The record provides no evidence that any of the minor plaintiffs or

their adult next friends, or any of the adult plaintiffs, were the record owners of the real property at the time the initial injury to the real property occurred. Therefore, because a cause of action for injury to real property is a personal right belonging only to the record owner of the real property at the time of the injury, the trial court clearly abused its discretion in denying Premcor's motion to dismiss the permanent nuisance action. The plaintiffs neither produce nor allege the existence of any pertinent evidence to the contrary.

■■■ Nevertheless, to be entitled to mandamus relief, Premcor must show not only that the trial court clearly abused its discretion, but also that it has no adequate remedy at law. *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex. 2004). As we have observed in a similar context, pleas to the jurisdiction are generally considered incidental rulings for which appeal is an adequate remedy. *In re Christus Health,* No. 09–05–363–CV, 2005 WL 2450146, at *1 (Tex.App.-Beaumont Sept. 22, 2005, orig. proceeding) (citing *In re State Bar of Texas,* 113 S.W.3d 730, 734 (Tex.2003); *In re SWEPI, L.P.,* 85 S.W.3d 800, 808 (Tex.2002); *Bell Helicopter Textron, Inc. v. Walker,* 787 S.W.2d 954, 955 (Tex.1990)). However, mass toxic tort litigation appears to be one recognized exception to the general rule because such litigation " 'places significant strain on a defendant's resources and creates considerable pressure to settle the case, regardless of the underlying merits.' " *See In re E.I. du Pont de Nemours and Co.,* 92 S.W.3d 517, 524 (Tex.2002) (quoting *CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex.1996) (citation omitted)).

■■■ In the petition for writ of mandamus, Premcor contends that plaintiffs' counsel "threatens lawsuits on behalf of thousands, and he settles their claims, but he has not yet named them as plaintiffs. . . . He has no reason to, since—by his theory—their claims will not expire until each has attained the age of 20." We find nothing in plaintiffs' response that denies or takes issue with the gist of this statement that there are thousands of potential minor-plaintiffs that will become named plaintiffs at some point in time over the next several years. We find, therefore, that the record indicates because of the size and complexity of the toxic tort litigation in question, it would be a prudent use of judicial resources to permit a preliminary resolution of the issue of permanent nuisance with respect to the purported injuries to the real property belonging to the plaintiffs. *See CSR Ltd.,* 925 S.W.2d at 597.

The plaintiffs contend that Premcor has entirely misconstrued the crux of their litigation in that the nuisance action is not a claim for any injury to the land, but instead is "for the loss of use and enjoyment of property and personal injuries sustained by those merely occupying the premises, like Plaintiffs." The issue of personal injury claims by plaintiffs is beyond the scope of Premcor's lack of standing complaint in both its motion to dismiss and its petition for writ of mandamus, and, therefore, is not subject to our decision here. The plaintiffs lack standing to pursue a permanent nuisance action for any purported injury to the real property as none of the plaintiffs were the owners of the land in question when the cause of action accrued with the first "injury" to the land occurring many years ago. Had they been entitled to assert a permanent nuisance claim regarding their real property, the damages to which they would have been entitled— lost market value—included within it the damages for loss of use and enjoyment of the property. *See Vestal v. Gulf Oil Corp.,* 149 Tex. 487, 235 S.W.2d 440, 442 (1951) ("Where the injury to realty is temporary,

the measure of damages may include recovery for loss of use and enjoyment; but damages for permanent injury comprehends and includes loss of use and enjoyment."). *See also Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984). Therefore, lack of standing to seek permanent nuisance damages to the real property includes lack of standing to seek "loss of use and enjoyment" damages.

We conclude that Premcor has demonstrated both clear abuse of discretion by the trial court in denying the motion to dismiss for lack of standing, and the lack of an adequate remedy at law. Accordingly, we conditionally grant Premcor's petition for writ of mandamus and direct the trial court to vacate the April 26, 2007, order denying Premcor Refining Group, Inc.'s, and Motiva Enterprises, L.L.C.'s joint motion to dismiss for lack of standing. We are confident the trial court will follow this opinion. The writ will issue only if the court fails to comply. We also lift our stay of discovery in the trial court as of the date this opinion is filed.

WRIT CONDITIONALLY GRANTED.